463 A.2d 1133

**COMMONWEALTH of Pennsylvania**

v.

**Walter D. ROBERTSON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 31, 1983.

Filed July 29, 1983.

Petition for Allowance of Appeal Denied Nov. 11, 1983.

---

**4.** It should be noted that our decision does not preclude the recovery of counsel fees and interest.

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CAVANAUGH, BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence after convictions in a non-jury trial of first degree murder and robbery. Appellant contends that: (1) the trial court erred in failing to suppress his confession; (2) the evidence was insufficient to support the homicide conviction; and (3) the evidence was insufficient to support the robbery conviction. We disagree with appellant and affirm the judgment of sentence.

On September 10, 1979, at 6:05 p.m., appellant was arrested for the murder and robbery of one Clay Christensen. He was taken before the deputy coroner for preliminary arraignment at 8:08 p.m. At this time, he was arraigned only on the murder charge because the deputy coroner did not have jurisdiction to arraign him for any crimes other than homicide.

From 9:01 p.m. to 9:30 p.m., appellant gave a taped statement in which he admitted his involvement in both the murder and the robbery of the victim. He was then arraigned on the robbery charge at 12:15 a.m. on September 11, 1979.

Appellant filed a pre-trial motion to suppress his statement. The court below heard testimony on the motion and

denied it on May 19, 1980. Appellant was found guilty of murder and robbery and his timely post-verdict motions were denied.

This timely appeal followed.

Appellant first contends that the court below erred in not suppressing his confession. He alleges two grounds in support of this contention: (1) that the confession was involuntary because it was given while he was under the influence of drugs and alcohol; and (2) that the confession was invalid because he was arraigned on the robbery charge more than six hours after his arrest. After a careful review of the record, we conclude that the opinion of the court below adequately disposes of appellant's first ground.

As to the second ground, appellant argues that the confession was inadmissible under the case of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). In that case, the Supreme Court established a per se rule that "[i]f the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment shall not be admissible at trial." *Id.*, 471 Pa. at 286, 370 A.2d at 306.

Appellant contends that since he was not arraigned on the robbery charge until six hours and ten minutes after his arrest and his confession was used to convict him of both robbery and murder, it was error to admit it into evidence. He argues further that since it would be impossible to separate the confession into separate parts, it should be totally inadmissible at a new trial.

We disagree with appellant. There is no question that the six hour rule was not violated with respect to the murder charge. The purpose of the rule is to insure that the accused is promptly afforded the protections of Pa.R. Crim.P. 140.[1] *Davenport*, supra. Also, the rule reflects

---

1. Rule 140, formerly Rule 119, provides, in part:
 (a) At the preliminary arraignment, the issuing authority shall not question the defendant respecting the offense charged, but shall

the importance of having the accused informed of his rights by a neutral judicial authority. *Id.* We find that these purposes were fully served in this case by appellant's arraignment on the murder charge.[2] Therefore, we do not believe that the confession should have been suppressed under the *Davenport* rule.[3]

Appellant next contends that the evidence was insufficient to support the convictions for robbery and homicide.

In reviewing the sufficiency of the evidence, we must view that evidence in the light most favorable to the Commonwealth and, drawing the proper inferences favorable to the Commonwealth, determine whether the trier of fact could reasonably have found that all elements of the crime had been established beyond a reasonable doubt. *Commonwealth v. Contakos*, 492 Pa. 465, 424 A.2d 1284 (1981).

Viewed thusly, the record establishes the following:

On August 15, 1979, the body of Clay Christensen was found in a wooded area of Frick Park. Appellant had met the victim in the mid-summer of 1979 as he was returning from a trip to California. The victim's car had

forthwith deliver a copy of the complaint to him. The issuing authority shall also inform the defendant:

(1) of his right to secure counsel of his choice and his right to be assigned counsel in accordance with Rule 316;

(2) of his right to have a preliminary hearing;

(3) if the offense is bailable, of the amount of bail demanded and the types acceptable as provided in these rules; and

(4) where to apply for bail if the offense is not bailable before the issuing authority.

(b) If the defendant desires to post bail, secure counsel or notify others of his arrest, he shall be held but not be committed to jail until he has been given immediate and reasonable opportunity to do so.

2. We also note that the record indicates that appellant at the time of his arrest was informed that he was being charged with murder and robbery.

3. This is not to say we look favorably upon the procedures followed by the police in this case. A defendant should preferably be arraigned on all charges within the six-hour limit established by *Davenport*. We simply find that under the facts of this case, the purposes of *Davenport* were satisfied.

been impounded and appellant paid to have it released. The two drove to Pittsburgh together, staying with a friend of appellant when they arrived.

Appellant left his friend's house after a short time and was separated from the victim for about a week. Appellant had argued with the victim about money the victim owed for his share of the expenses incurred during the drive to Pittsburgh.

On the day of the victim's death, appellant telephoned him and asked him if he wanted to attend a "keg party." The victim did and drove to pick up appellant and a friend. After he arrived, he was instructed to drive to the home of another friend of appellant. There, appellant got a .22 caliber rifle which he wrapped in a towel and placed in the trunk of the car. The three men then drove to Frick Park.

After entering the park, the victim and appellant's friend began to argue and eventually fight over some drugs which were allegedly missing from the victim's car. Appellant's friend beat the victim severely and then walked away from him. As the victim struggled to get back up, appellant knocked him back to the ground, then drew back and shot him once through the back of the head. Appellant then took the victim's money, car keys, and watch.

Also, after appellant's friend had beaten the victim, appellant had said to the victim: "Yeah, well, you ain't going nowhere till I get my money."

After reviewing this record, we conclude that the trial court's opinion adequately disposes of appellant's contention as to the sufficiency of the evidence for first degree murder.

As to the robbery conviction, appellant argues that he had no intention to rob the victim. He claims that property was taken only as a spontaneous afterthought. Therefore, he concludes that at most he could be convicted of theft since one cannot rob a dead man. See, 18 Pa.C.S.A. § 3701; *Commonwealth v. Legg*, 491 Pa. 78, 417 A.2d 1152 (1980).

However, we believe the evidence is more than sufficient to establish that appellant intended to take property from the victim before the victim's death and did so by inflicting "serious bodily injury upon" the victim. See 18 Pa.C.S.A. § 3701(a)(1)(i).[4]

Accordingly, we affirm the judgment of sentence.

---

**4.** The existence of an intent to commit robbery that is contemporaneous with the intent to commit a homicide can be established by an inference arising from the circumstances or acts committed very shortly after the killing. See *Legg,* supra.