417 A.2d 1152

COMMONWEALTH of Pennsylvania, Appellee,

v.

Howard LEGG, Appellant.

Supreme Court of Pennsylvania.

July 15, 1980.

Reargument Denied Sept. 11, 1980.

Benjamin Paul, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Asst. Dist. Atty., Franklin L. Noel, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

Appellant, Howard Legg, was convicted by a jury of murder of the second degree, robbery, and possession of an instrument of crime-generally. Following a denial of post-verdict motions, Legg was sentenced to life imprisonment on the murder charge and to concurrent terms of imprisonment of five to ten years on the robbery charge and two and one-half to five years on the possession of an instrument of crime-generally charge. These appeals followed.

Legg first contends the evidence was insufficient as a matter of law to establish his guilt of murder of the second degree or of robbery.

After an examination of the record, we conclude that the evidence was clearly sufficient, but that a new trial is necessary on the murder and robbery charges because of prejudicial error in the trial court's instructions to the jury.

The record reveals that Legg and James Bell, Jr., spent several hours the night of September 26, and early morning of September 27, 1977, together with others, traveling in Bell's automobile to various locations in Philadelphia. Eventually, the others departed from the group, and Legg accompanied Bell to the latter's apartment where they engaged in sex. An argument occurred, and Legg fatally stabbed Bell in the back with a knife. Legg then stole Bell's wallet, keys, money, and automobile.

Testifying in his own behalf, Legg said that he stabbed Bell after the latter had attacked him with a knife and that the thefts were a spontaneous afterthought to the stabbing. He also said he had no intention to rob or steal prior to or at the time of the stabbing.

 The trial judge, following a request from the Commonwealth for further instructions, told the jury "the intent to commit the felony of robbery may be formed by the actor, the robber, the one doing the acts, either before or after the infliction of the fatal wound . . . ." Legg's trial counsel entered a specific objection to this instruction following the charge and also specifically assigned it as error in post-verdict motions. Presently, Legg reiterates his claim that the instruction was an incorrect statement of law.[1] We agree.

 Initially, we must point out that the trial court cannot be faulted for having given this charge because we have, in prior decisions, specifically subscribed to the view that, if a killing occurs in the perpetration of or an attempt to commit one of the statutorily enumerated felonies, a conviction of felony-murder will be sustained regardless of when the

1. While in post-verdict motions the argument was set forth separately from the sufficiency of the evidence claim, it is presently made within Legg's argument on sufficiency. But, in any event, the claim is clearly presented to us.

intent to commit the felony was conceived. See *Commonwealth v. Stelma*, 327 Pa. 317, 192 A. 906 (1937); *Commonwealth v. Hart*, 403 Pa. 652, 170 A.2d 850 (1961); and *Commonwealth v. Slavik*, 437 Pa. 354, 261 A.2d 583 (1970). But, upon further reflection, we now believe a departure from those decisions is warranted.

When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule,[2] allows the finder of fact to infer the killing was malicious from the fact that the actor engaged in a felony of such a dangerous nature to human life because the actor, as held to a standard of a reasonable man, knew or should have known that death might result from the felony. *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290 (1972). Additionally, a greater penalty is imposed for murder of the second degree or felony murder, than that imposed for murder of the third degree even though the latter also is malicious. See 18 Pa.C.S.A. §§ 2502, 1102, and 1103. In so providing, the law seeks to add a greater deterrent to engaging in particularly dangerous felonies.[3] *Commonwealth v. Yuknavich*, supra.

But, where an actor kills prior to formulating the intent to commit the underlying felony, we cannot say the actor knew or should have known death might occur from involvement in a dangerous felony because no involvement in a dangerous felony exists since the intent to commit the felony is not yet formulated. Also, the greater deterrent is not necessary, and the rule has no application. Accord *Common-*

2. In *Commonwealth v. Allen*, 475 Pa. 165, 379 A.2d 1335 (1977) (plurality opinion, Nix, J. joined by Eagen, C. J. and O'Brien, J.; concurring opinion, Roberts, J.), we indicated that the new Crimes Code, 18 Pa.C.S.A. §§ 101 *et seq.*, modified prior law with regard to accomplice liability for a felony-murder little, if at all. The same is true with regard to the application of the felony-murder rule to the slayer.

3. For a discussion of the purposes of and policies behind the felony-murder rule and of the reasons for limitations on its application, see N. Morris, *The Felon's Responsibility for the Lethal Acts of Others*, 105 U. of Pa. 50, 69–74 (1956).

*wealth v. Spallone,* 267 Pa.Super. 486, 406 A.2d 1146 (1979), and numerous cases and other authorities therein cited.

■ Our research indicates that approval of the charge here given sprung from language in cases where the sufficiency of the evidence was challenged or, more particularly, from cases wherein it was claimed no evidence existed to establish an intent to commit the underlying felony when the act of killing occurred. See e. g. *Commonwealth v. Stelma,* supra. The cases from which approval of the charge as given sprung could have been decided, in most instances, by merely holding that the intent to commit the felony when the act of killing occurred was established by an inference arising from the circumstances or acts committed very shortly after the slaying.[4] Of course, this is far different from saying the intent to commit the felony may be conceived after the act causing death.

Accordingly, we now expressly disapprove the charge as herein given, depart from our decisions which have approved such a charge, and hold the charge was erroneous.

The charge given in no manner prejudiced Legg's trial on the possession charge, and Legg advances no reason why this particular conviction should be reversed.

The judgment of sentence on the possession of an instrument of crime is affirmed. The judgments of sentence on the murder and robbery charges are reversed, and a new trial is granted on these charges.

4. This principle we reaffirm and hasten to point out that it provides the appropriate vehicle to ensure proper application of the felony-murder rule where the Commonwealth, as so often occurs, is unable to obtain evidence to directly establish intent. Hence, our ruling is limited and contracts the felony-murder rule little, if at all. But, assuming we are now contracting the rule, our holding is in full accord with the views we expressed some ten years ago in *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 261 A.2d 550 (1970), where speaking for the Court, Mr. Justice O'Brien analyzed the rule, its purposes, and the policies it advances and said:

". . . not only is the felony-murder rule nonessential, but it is very doubtful that it has the deterrent effect its proponents assert."

FLAHERTY, J., filed a concurring opinion.

LARSEN, J., filed a dissenting opinion in which KAUFF-MAN, J., joins.

LARSEN, Justice, dissenting.

I dissent.

First, I agree with that line of cases holding that a conviction of felony-murder will be sustained regardless of when the intent to commit the felony was formed, and I would not overrule them.[1] As the trial court charged the jury in accordance with those cases, there was no error in the instructions.

Second, the jury found appellant guilty of the first count of the information charging robbery. That particular count charges that appellant inflicted serious bodily injury upon the victim *in the course of committing a theft*. See Act of December 6, 1972, P.L. 1480, No. 334, § 1, *as amended*, 18 Pa.C.S.A. § 3701(a)(1)(i). Appellant could not have inflicted serious bodily injury upon the victim in the course of committing a theft had he not formed the intent to take the victim's property until after committing the homicide. Thus, it is explicit in the jury's verdict of guilty of robbery that they did not accept appellant's testimony that he took the victim's property as an "after-thought" to the homicide, and the alleged error in the instructions was, therefore, harmless.

Accordingly, and for both of the foregoing reasons, I believe the judgments of sentence should be affirmed.

KAUFFMAN, J., joins in this dissenting opinion.

FLAHERTY, Justice, concurring.

I concur with the conclusion reached by the majority as I am satisfied that it is not inconsistent with my concurring and dissenting opinion in *Commonwealth v. Waters*, 491 Pa. 85, 418 A.2d 312. [1980].

1. See those cases cited in the Majority Opinion at page 1154.